UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CATHERINE KAPLA,

        Plaintiff,                      CIVIL ACTION NO. 12-11010

vs.

                                          DISTRICT JUDGE PATRICK J. DUGGAN

COMMISSIONER OF                 MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION:** This Court recommends that Plaintiff's motion for remand pursuant to sentence four (docket no. 11) be granted, Defendant's motion for summary judgment (docket no. 15) be denied, and this matter be remanded to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**II.    PROCEDURAL HISTORY:**

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on March 18, 2009, alleging disability beginning August 8, 2006. (TR 137-40). The Social Security Administration denied benefits and Plaintiff filed a timely request for a *de novo* hearing. On March 29, 2010, Plaintiff appeared with counsel in Detroit, Michigan and testified at a video hearing held by Administrative Law Judge (ALJ) Michael E. Finnie, who presided over the hearing from Dallas, Texas. (TR 57-105). Vocational Expert (VE) Evelyn Hartman also appeared and testified at the hearing. In an August 25, 2010 decision the ALJ found that Plaintiff was not entitled to disability benefits because there were a significant number of jobs existing in the national

1

economy which Plaintiff could perform. (TR 12-23). The Appeals Council declined to review the ALJ's decision and Plaintiff filed the instant action for judicial review. (TR 1-4).

## III. PLAINTIFF'S TESTIMONY. LETTER FROM DAUGHTER, AND MEDICAL EVIDENCE

### A. Plaintiff's Testimony

Plaintiff was forty-eight years old at the time of her alleged onset of disability. (TR 22). She obtained a high school diploma and completed one semester in a technical school studying secretarial skills. (TR 64-66). She testified that she received good grades in secretarial school but she had a difficult time because she was a slow reader. (TR 65-66). She worked as a janitor in a medical center until she was laid off. Plaintiff testified that she and her husband moved into her daughter's home because they were having financial difficulties, and for a period of time she helped care for her grandchild. (TR 68, 84-85).

Plaintiff testified that she is unable to work because she is very fearful, she has difficulties with uncontrolled diabetes, post traumatic stress disorder (PTSD), bilateral tendinitis in the wrists, sacroiliac joint dysfunction, and problems with her legs and left shoulder. (TR 68-71). She testified that she received mental health treatment from the University of Michigan but she does not take medications because she has limited insurance coverage and she has had problems with medication side effects. (TR 69-70). She states that the thought of having to look for a job and return to work is particularly stressful for her. (TR 75). Plaintiff testified that her husband or daughter help her grocery shop and accompany her to appointments because she is afraid to leave the house alone. (TR 82-83). She claims that she is claustrophobic and cannot ride in elevators. (TR 82).

Plaintiff states that she has one or two low blood sugar episodes each month that may take her all day to recover from. (TR 79). She states that she has difficulty concentrating and memory

2

loss with low blood sugar episodes. (TR 80-81). She claims she has difficulty holding small objects because of wrist tendinitis, she is unable to lift a gallon of milk, she has trouble with buttons and zippers, and her husband has to help her dress because she has a shoulder impairment. Plaintiff reports that she can stand for ten minutes at a time before needing to sit. (TR 72-73).

**B.     Letter from Daughter**

Plaintiff's daughter wrote a letter regarding her mother's social security disability case on July 17, 2010. (TR 198-99). The letter recounts abusive treatment Plaintiff allegedly received at the hands of her former boss. In the letter, Plaintiff's daughter states that Plaintiff's boss was degrading toward women, spoke down to people, and instilled fear in Plaintiff. According to the daughter, Plaintiff has nightmares and panic attacks about the treatment she received from her former boss. The daughter states that as Plaintiff's physical pain and diabetes developed her coping mechanisms decreased, especially in the winter of 2008. The daughter indicates that Plaintiff has periods of time where she will not leave the house for days. She states that Plaintiff generally does not go out alone, but if she does it is for no more than an hour at a time and the experience causes her to return in a heightened state of anxiety and paranoia. The daughter states that Plaintiff won't speak to men with the exception of her husband and father and she is almost obsessed with her paranoia and PTSD. She claims that Plaintiff is now so physically impaired that she requires help getting dressed and tying her shoes. The daughter states that she does not believe Plaintiff can work on her own and function outside of the home.

**C.     Medical Evidence**

The undersigned has thoroughly reviewed the medical evidence and will summarize limited portions of the record below. The record shows that Plaintiff has a history of type I diabetes diagnosed at the age of ten, hypothyroidism, carpal tunnel syndrome with surgery on her right carpal

3

tunnel for release back in 1993 or 1994, left shoulder pain, right sacroiliac dysfunction, right leg radiculopathy, peripheral neuropathy, panic disorder with agoraphobia, and PTSD. An MRI of the lumbar spine revealed minor degenerative disc changes at L4-L5 without neurospinal or neuroforaminal stenosis. An MRI of the shoulder revealed left shoulder labrum tear posteriorly with degeneration, with the tear extending superiorly and with associated mild posterior subluxation of the humeral head and associated osteoarthrosis. (TR 227). Plaintiff was referred to orthopedic surgery. A September 2009 x-ray of the sacroiliac joints revealed mild degenerative changes in the bilateral sacroiliac joints with mild osteoarthritis of the bilateral hips. (TR 332).

In December 2008 Plaintiff presented for diabetes follow up. The medical note states that Plaintiff's diabetes was well controlled with her last hemoglobin A1C being 6.5. The medical note shows that Plaintiff had no significant episodes of hypoglycemia, despite the fact that her blood sugar range had a wide variation. (TR 211-12). Plaintiff informed the examiner that she was stressed rather than depressed. She reported that she experienced anxiety attacks in the past when she worked at an unpleasant job but she stated that she no longer has the attacks. (TR 211, 214). Plaintiff reported that her daily activities like sleep, appetite, memory, concentration, and self-image were not impacted by her stress level. (TR 214). The clinician noted that Plaintiff had bilateral sensation of her upper extremities to light touch, normal reflexes in both upper extremities, full grip strength, and a normal gait. (TR 215). Plaintiff's December 17, 2008 hemoglobin A1C was 7.7 and she was referred to the endocrinologist for fine tuning of her insulin regimen. Her February 2009 hemoglobin A1C was 7.4, with her goal being below 7.0. (TR 234). In February 2009 the endocrinologist reported that Plaintiff had a tendency towards hyperglycemia at various times of the day but no reported incidents of severe hypoglycemia. The endocrinologist made adjustments to Plaintiff's insulin regimen and reported that Plaintiff was doing quite well considering her long

history of type 1 diabetes.

Plaintiff was evaluated at the University of Michigan Spine Program in December 2009. (TR 274). The evaluater reported that Plaintiff received right sacroiliac joint injections in October 2009 to treat chronic sacroiliac pain. Plaintiff reported a pain level of two on a ten point scale with no associated weakness or ambulatory difficulty. (TR 274, 294). The injections did not resolve Plaintiff's pain, but the medical note states that she reported no further flares of discomfort in the region. The examiner noted that Plaintiff had full strength in her lower extremities, with a subtle restriction at the left hip on internal rotation with no pain response. In November 2009, Plaintiff reported that she was providing care for her grandson on a regular basis while her daughter worked. (TR 276, 296, 338).

In May 2009 Elizabeth Bishop, Ph.D., licensed psychologist examined Plaintiff and completed a psychiatric/psychological medical report for the state disability determination service. (TR 238-41). Dr. Bishop noted that Plaintiff drove herself to the examination and was accompanied by her husband. Dr. Bishop noted that Plaintiff related openly and appropriately with her during the examination. The doctor observed that Plaintiff's gait was slow but unassisted and her posture was tense. Plaintiff's speech was clear, logical and spontaneous. She appeared anxious and reported that she was stressed about the social security disability application process. Plaintiff could repeat four numbers forward and four backward, recall three out of three objects after a three-minute delay, name past and current Presidents, identify five major cities, famous people, and a current event. Plaintiff could identify the similarities and differences between objects and she had good judgment. She was unable to perform serial sevens past ninety-three. Plaintiff reported that she watches television and cooks with her daughter, washes laundry every two to three weeks, and plays cards on the computer. Dr. Bishop opined that it was highly unlikely that Plaintiff could maintain

5

consistent employment given her panic attacks, post traumatic stress disorder symptoms, and health issues. (TR 240).

Dr. Thomas T. L. Tsai completed a Psychiatric Review Technique and Mental Residual Functional Capacity in May 2009. (TR 250-66). In the Psychiatric Review Technique, Dr. Tsai found that Plaintiff was moderately limited in maintaining concentration, persistence or pace and social functioning, mildly restricted in her activities of daily living, with no episodes of decompensation. Dr. Tsai found that Plaintiff's difficulties with concentration, paying attention, following instructions, nervousness, panic attacks, stress, and memory problems could be caused by her medically determinable impairments of panic disorder and PTSD. However, he found that Plaintiff's symptoms were not well documented in the record. He also found that Plaintiff could reasonably be experiencing increased stress since losing her job and her home, but he noted that she did not lose her job due to her mental health symptoms. Despite her stress, Dr. Tsai noted that Plaintiff could handle her finances, cook some meals, shop, go out alone and drive. He also noted that the field office reported no problems with concentration, understanding or coherency. Dr. Tsai concluded that Plaintiff was capable of performing unskilled work.

In his Mental Residual Functional Capacity Dr. Tsai found that Plaintiff was moderately limited in her ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule/maintain regular attendance and be punctual, accept instructions and respond appropriately to criticism, and respond appropriately to changes in the work setting. (TR 264-65). In all other categories, Dr. Tsai found that Plaintiff was not significantly limited. He concluded that Plaintiff was capable of performing simple one to two step tasks on a routine and regular basis.

In May 2009 Julia Johnson completed a Physical Residual Functional Capacity Assessment.

(TR 242-49). Ms. Johnson determined that Plaintiff could lift or carry twenty pounds occasionally, ten pounds frequently, stand/walk/and sit six hours in an eight hour workday, with unlimited push/pull activities. (TR 242-43). Ms. Johnson indicated that Plaintiff could occasionally crawl but never climb ladders, ropes, or scaffolds, she could never feel, she could not engage in overhead reaching with the left upper extremity, she could only frequently engage in bilateral handling and fingering, and she should avoid concentrated exposure to vibrations. Otherwise Plaintiff was not limited in her postural, manipulative, visual, communicative, or environmental activities. Ms. Johnson concluded that Plaintiff's physical examination showed good strength in her legs and hands, fairly well controlled blood sugars, adequately controlled hypertension and thyroid, with a recently diagnosed left labrum tear that would limit overhead reaching with her left upper extremity. Ms. Johnson opined that Plaintiff retained the ability to perform light work.

A December 2009 social work progress note states that Plaintiff reported that her mood was stable and she was managing her anxiety as best she could without medication. (TR 271). At other times Plaintiff reported that she enjoyed public activities such as sporting events or going to the movies, although she did not do those activities often. (TR 345). In September and October 2009 Plaintiff reported that her mood was good, her anxiety was stable, and she handled frustrations well. (TR 279, 282). She also reported that her depression and anxiety had somewhat alleviated and she attributed this to the fact that she was walking regularly. (TR 297).

Plaintiff presented to Dr. Shannon Jap for a psychiatric evaluation in December 2009. (TR 338-39). Plaintiff reported that she was doing well, she was not taking medication to treat her anxiety, and she was sleeping well at night. She reported feeling anxious when she thinks about the possibility of returning to work but otherwise indicated that her anxiety was stable. Dr. Jap observed that Plaintiff was calm, cooperative, and engaged in the interview with good eye contact. Her mood

7

was euthymic, her thought process linear, and she was relatively optimistic. Her insight and judgment were fair. Dr. Jap diagnosed Plaintiff with PTSD, assigned a GAF of 60 to 65, and stated that Plaintiff did not need to continue following up with psychiatry.

In September 2010 Plaintiff presented to St. Joseph Mercy Hospital with complaints of anxiety symptoms brought on after she received a letter informing her that her social security disability benefits had been denied. (TR 385, 398). The examiner concluded that Plaintiff needed inpatient psychiatric care. (TR 386).

The record shows that Joe DeLoach, Ph.D. in psychology, completed a psychiatric review technique form in February 2007 indicating that Plaintiff had no medically determinable impairment. He found that no mental status examination was needed because the activities of daily living and evidence of record do not suggest the existence of a severe psychiatric impairment. (TR 206). A 2007 mental health assessment states that Plaintiff was cheerful, her speech was logical, coherent and goal-directed, her remote memory was not impaired, her judgment was good, and her attention/concentration was characterized by an ability to attend and maintain focus. (TR 359-60). Plaintiff was assigned a GAF of 72.

### IV. VOCATIONAL EXPERT TESTIMONY

The VE testified that Plaintiff's past work as a janitor was semi-skilled labor with medium physical demands, and her past work as a hospital cleaner was unskilled work with medium exertional demands. (TR 101). The ALJ asked the VE to testify whether jobs were available for an individual with Plaintiff's age, education, and past work experience who requires light work limited to occasional lifting of twenty pounds and briefly lifting ten pounds, standing and walking six hours in an eight hour workday, and sitting/standing/walking with normal breaks, with no limitations in pushing or pulling, and no climbing of ladders or scaffolds or overhead reaching, and

with the need to avoid concentrated exposure to vibrations. (TR 101-02).

The VE testified that the hypothetical individual would not be able to perform Plaintiff's past work, but could perform light unskilled work as a production assembler, cafeteria attendant, and cleaner/housekeeping, comprising 20,600 jobs in the State of Michigan. (TR 102-03). The VE testified that the individual would be able to perform the jobs previously listed, other than cafeteria worker, if she was also limited to simple routine unskilled tasks with no more than occasional contact with the general public. (TR 103). Next, the VE testified that the individual would be precluded from work if she required sedentary work with occasional lifting or carrying of ten pounds, and standing and walking at least six hours in an eight hour workday.

## V.   ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff had not engaged in substantial gainful activity since her alleged onset date of August 8, 2006, and suffers from the severe impairments of insulin dependent diabetes mellitus, peripheral neuropathy, hypertension, degenerative disc disease of the lumbar spine, degenerative joint disease of the left shoulder, history of carpal tunnel syndrome status post carpal tunnel release, PTSD, and anxiety disorder, she did not have an impairment or combination of impairments that meets or equals the Listing of Impairments. (TR 12-15).

The ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform a limited range of light work requiring only simple routine tasks to include to lift and/or carry twenty pounds occasionally and ten pounds frequently, stand/walk/and sit six hours in an eight hour workday, with no more than occasional contact with the general public and no overhead reaching with the left hand. (TR 15-21). The ALJ concluded that Plaintiff has not been under a disability as defined in the Social Security Act from August 8, 2006, the alleged onset of disability, through August 25, 2010, the date of the ALJ's decision because there are jobs that exist in significant

numbers in the national economy that Plaintiff can perform. (TR 15-23).

## VI. LAW AND ANALYSIS

### A. Standard Of Review

Pursuant to 42 U.S.C. § 405(g), the district court has jurisdiction to review the Commissioner's final decisions. Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

### B. Framework for Social Security Disability Determinations

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

    1. she was not engaged in substantial gainful employment; and
    2. she suffered from a severe impairment; and
    3. the impairment met or was medically equal to a "listed impairment;" or
    4. she did not have the residual functional capacity to perform her past relevant work.

20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented her from doing her past relevant work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work experience to determine if she could perform other work. If she could not, she would be deemed disabled. 20 C.F.R. § 404.1520. The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question if the question accurately portrays the plaintiff's physical and mental impairments. *Id.* (citations omitted).

**C.    Analysis**

Plaintiff moves for a sentence four remand on the basis that the ALJ's decision denying her benefits is not supported by substantial evidence. Plaintiff argues that the ALJ failed to properly evaluate medical opinions, incorporated a limitation in the RFC that was not part of any hypothetical question presented to the VE, and failed to accurately account in the RFC and hypothetical questions for Plaintiff's moderate difficulties in concentration, persistence, or pace and social functioning.

*1.    Assessment of Treating and Non-Treating Source Opinions*

Plaintiff first contends that the ALJ failed to provide good reasons for attributing no weight to the treating source opinion of Dr. Mari Syl De la Cruz, while attributing controlling weight to the opinions of nonexamining state disability examiners, Dr. Thomas Tsai and Julia Johnson. It is well-settled that the opinions of treating physicians are generally accorded substantial deference. In fact, the ALJ must give a treating physician's opinion complete deference if it is supported by clinical

11

and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2). It is equally as well-settled that the ultimate issue of disability is reserved to the Commissioner and not the treating or examining physician. *Kidd v. Comm'r*, 283 Fed. Appx. 336, 341 (6th Cir. 2008). Thus, when a medical or non-medical source offers an opinion on "an issue reserved to the Commissioner, such as whether the claimant is disabled, the ALJ need not accord that opinion controlling weight." *Id.* (citing *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007)). The opinion of an examining source is generally accorded more weight than is the opinion of a source who did not examine the claimant. 20 C.F.R. § 404.1527(c)(1). The opinion of a state agency medical or psychological consultant is reviewed in the same manner as is the opinion of a nonexamining physician or psychologist. 20 C.F.R. §404.1527(e).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. § 404.1527(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson v. Comm'r*, 378 F.3d 541, 544 (6th Cir. 2004) (citing Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *5 (1996)).

Plaintiff argues that the ALJ attributed no weight to the treating decision of Dr. De la Cruz without providing the proper analysis or offering good reason for his decision to reject the opinion. In April 2010 Dr. De la Cruz listed Plaintiff's diagnoses as type 1 diabetes mellitus, carpal tunnel syndrome, depression and anxiety, and opined that Plaintiff could not spend any time standing and walking in an eight hour workday. The doctor opined that Plaintiff could sit eight hours in an eight

hour workday in sixty minute increments. (TR 373). She noted that Plaintiff could lift and carry five pounds occasionally and no amount of weight frequently. She further opined that Plaintiff could occasionally push/pull with her arms and legs and would require regular breaks to check her blood sugar five times each day. The ALJ considered Dr. De la Cruz's opinion and assigned it no weight, finding that the opinion failed to reference any objective diagnostic findings and clinical signs to support the severe restrictions. The ALJ concluded that the opinion was inconsistent with the medical evidence of record and with Plaintiff's activities of daily living.

As a treating physician, Dr. De la Cruz's opinion was entitled to great deference unless the ALJ provided good reasons for discounting it. *Hensley v. Comm'r*, 573 F.3d 263, 266 (6th Cir. 2009). "If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors-namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source-in determining what weight to give the opinion." *Wilson,* 378 F.3d at 544 (citation omitted). Even then, a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to controlling weight, not that the opinion should be rejected. Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *4.

Here, the ALJ briefly summarized Dr. De la Cruz's opinion and stated without explanation that the opinion would be afforded no weight because it was inconsistent with the doctor's narrative notes, the observations of other treating sources, and Plaintiff's activities of daily living. The undersigned is not persuaded that the ALJ properly assigned no weight to Dr. De la Cruz's treating opinion or evaluated the opinion as provided in 20 C.F.R. § 404.1527.

After discounting the opinion of Dr. De la Cruz, the ALJ concluded that the Physical RFC completed by state agency reviewer Julia Johnson should provide the basis for his RFC. The ALJ made this determination without ever discussing the contents of Julia Johnson's opinion or the relevancy of Ms. Johnson's opinion in light of Plaintiff's treatment with Dr. De la Cruz. Additionally, the ALJ adopted some but not all of Ms. Johnson's findings. In particular, Plaintiff complains that the ALJ did not adopt Ms. Johnson's findings that she could only frequently engage in bilateral handling and fingering. This evidence would be consistent with other evidence in the record that suggests that Plaintiff had difficulty buttoning clothes, tying shoes, and grasping objects. Certainly, the ALJ is not required to discuss every medical report in his opinion, address every medical impairment in the RFC, or adopt every medical finding cited in a source's opinion. However, the ALJ stated that he based Plaintiff's Physical RFC on Ms. Johnson's opinion. Despite this the ALJ did not adopt Ms. Johnson's limitation on fingering and handling, and he did not discuss the handling and fingering limitation in his opinion. The fact that he did not even raise the handling and fingering limitation, or discuss any part of Ms. Johnson's opinion, leaves the undersigned to wonder if he rejected that limitation or simply overlooked it.

In the same way the ALJ adopted the psychiatric assessment of Dr. Thomas Tsai without discussing the contents of that opinion or the relevance Dr. Tsai's opinion had in light of Plaintiff's other treatment. In particular, while the ALJ summarized Plaintiff's various mental health reports, he did not compare or contrast the opinions of Drs. Bishop, Marcus, and Jap, each of whom at least examined Plaintiff, against any of the findings made in Dr. Tsai's nonexamining consultative opinion. Defendant argues that the ALJ did not err because the evidence provides greater support for Dr. Tsai's opinion than it does for others. While this may be true, it is not for the Court to weigh the evidence or guess at what the ALJ may have intended when he adopted an opinion he did not

14

discuss. The undersigned agrees with Plaintiff that this matter should be reversed and remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should discuss the medical source opinions, explain the weight given to those opinions and the reasons the ALJ believes they are consistent or inconsistent with the medical evidence.

2.     *Residual Functional Capacity and Hypothetical Questions*

Next, Plaintiff argues that the RFC contains a limitation that was not accounted for in a hypothetical question to the VE. Specifically, Plaintiff argues that the RFC found that Plaintiff is limited to standing, walking, and sitting for six hours in an eight hour workday. She claims that the hypothetical limited her to standing and walking with normal breaks six hours in an eight hour day, and sitting with normal breaks. She also seems to argue that the RFC limited her to a combined total of six hours of standing, walking, and sitting, meaning that she was not capable of working an entire eight hour workday. The undersigned agrees with Defendant that this is a strained reading of the RFC. Plaintiff's motion for remand should be denied as to this claimed error.

Plaintiff next argues that the ALJ failed to adequately account for Plaintiff's moderate difficulties in concentration, persistence, or pace and in social functioning. Plaintiff contends that the ALJ adopted Dr. Tsai's psychiatric evaluation but failed to incorporate into the hypothetical and RFC the doctor's finding that Plaintiff has sufficient concentration to complete only one to two step tasks. The undersigned agrees that the ALJ failed to incorporate this finding into the hypothetical and RFC. As previously discussed, the ALJ also failed to discuss the substance of Dr. Tsai's report. Therefore, it simply is not clear whether the ALJ overlooked Dr. Tsai's restriction of one to two step tasks, or whether the ALJ decided for a valid reason that he would provide that particular restriction little weight.

The undersigned also agrees with Plaintiff that the ALJ did not adequately account for

Plaintiff's limitations in social functioning. The evidence suggests that Plaintiff is perhaps intensely fearful of authority figures, particularly male authority figures. Indeed, the ALJ acknowledged that Plaintiff becomes anxious and occasionally develops panic attacks when she is in a situation where men are in an authority position. (TR 18). Nevertheless, in his hypothetical to the VE the ALJ included the limitation that Plaintiff have no more than occasional contact with the general public. Likewise, the RFC restricts Plaintiff to no more than occasional contact with the general public. It is the undersigned's opinion that the ALJ should have accounted for Plaintiff's difficulties in social functioning by providing a limitation in the hypothetical and RFC that limits in some manner Plaintiff's interaction with supervisors. At a minimum, the ALJ should have discussed such a limitation and whether he believed it would be consistent with the evidence.

The undersigned finds that this matter should be reversed and remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should discuss the validity of Dr. Tsai's assessment that Plaintiff is limited to one to two step tasks, and discuss Plaintiff's social functioning limitation that she is fearful of authority figures. If on remand the ALJ finds that these limitations are credible they should be incorporated into a valid hypothetical question posed to a VE and into Plaintiff's RFC.

Finally, Plaintiff alludes to the fact that there are "inaudibles" contained in the portion of the ALJ's hearing transcript pertaining to the ALJ's examination of the VE. Plaintiff states that significant portions of the testimony was inaudible during the hearing. She contends that the major gaps during the VE's testimony further denotes lack of substantial evidence. The undersigned disagrees. While the hearing transcript does contain inaudible portions during the VE's testimony, the undersigned finds that the transcript is not so lacking as to warrant remand on that basis. *See Jacob v. Comm'r*, No. 10-1610, 2011 WL 723059, at *8 (N.D. Ohio Jan. 27, 2011).

**REVIEW OF REPORT AND RECOMMENDATION**:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.


Dated: January 25, 2013            s/ Mona K. Majzoub
                                   MONA K. MAJZOUB
                                   UNITED STATES MAGISTRATE JUDGE

17

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.


Dated: January 25, 2013     s/ Lisa C. Bartlett
                            Case Manager